Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NICLAS FOSTER, as Personal Representative of the Estate of MEIKE FOSTER,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN HONDA MOTOR COMPANY, INC., a foreign corporation; HONDA MOTOR COMPANY, LTD., a foreign corporation; HONDA NORTH AMERICA, INC., a foreign corporation; HONDA OF CANADA MANUFACTURING d/b/a HONDA OF CANADA, INC., a foreign corporation; HONDA R&D AMERICAS, INC., a foreign corporation,<br><br>Defendants. | No. 2:17-cv-01727-JCC<br><br>PLAINTIFF'S BRIEF FOR EVIDENTIARY HEARING ON ADMISSIBILITY OF OTHER SIMILAR INCIDENTS<br><br><br>HEARING DATE: 10/01/2019 |

## I. INTRODUCTION

Plaintiff seeks a pretrial ruling on the admissibility of 17 incidents of Honda CR-V fires that Plaintiff's engineering and automotive fire expert has selected from 60 fires as "substantially similar" to the fire that killed Meike Foster. All of the fires involve 2012-2014 Honda CR-Vs with the same engine and exhaust system as Ms. Foster's car. All of the fires ignited spontaneously while the vehicle was being operated or just after parking. All fires started in or near the engine compartment or nearby subframe. Of the 17 incidents:

- Five of the Honda CR-V fires were reported to Honda prior to Ms. Foster's death and will be offered to prove notice of a potential defect.

- Seven of the fires include direct or circumstantial evidence that the fire was caused by organic material carried within the car and ignited by hot, unshielded exhaust components and will be offered to prove defect.

- Plaintiff was able to contact and depose several of the owners and drivers of the burning cars. The testimony of some of these witnesses will be offered to prove damages (predeath emotional pain and suffering) as well as consumer expectations, both of which are elements of the Washington Product Liability Act balancing test.

- The remaining handful of reports, most of which were not investigated sufficiently by Honda, will be offered because they are consistent with plaintiff's theory, and the lack of investigation proves negligence on the part of Honda.

## II. RELIEF REQUESTED

Plaintiff requests that the Court admit certain incidents at trial for purposes of proving notice, defect and/or damages.

## III. EVIDENCE RELIED UPON

The Declarations of Mark W. Arndt, Sam Shuck, Peter O'Neil, Ann O'Neil and the files and records of this case.

PLAINTIFF'S BRIEF FOR
EVIDENTIARY HEARING - 1
No. 2:17-cv-01727-JCC

SCHROETER, GOLDMARK & BENDER
810 Third Avenue • Suite 500 • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

### IV.     FACTS AND PROCEDURAL POSTURE

Meike Foster burned to death on November 26, 2014, when her nearly new 2014 Honda CR-V sports utility vehicle ignited at the Meridian Valley Country Club in Kent, Washington.  Declaration of Peter O'Neil, ¶ 2 and Ex. 1.  Ms. Foster had spent an evening playing dominoes and visiting with several friends at the Meridian Valley Country Club clubhouse. *Id*. Ex. 1, p. 4.  According to their waitress, the group began leaving at about 9:45 pm.  *Id*. Ms. Foster's friend Patricia Perry testified Meike Foster was the last to drive away.  She said she saw the taillights of Ms. Foster's car as she (Perry) left, but noticed that Ms. Foster's car didn't follow her up the driveway.  *Id.* Ex. 3.  At approximately 10:10 another patron, Rodney Lindbeck, left the clubhouse to find Ms. Foster's car in flames.  He returned to the clubhouse to make one of many calls to 911.  *Id*. Ex. 1, p 6.  The Kent Fire Department arrived on scene at 10:31 pm, finding the car fully involved in fire.  The burning car was parked several feet off the road in a bed of ivy. *Id* ¶ 2.  Ms. Foster's charred body was found in the driver's seat clutching the key, which she had removed from the ignition.  There is no living witness to the fire's ignition.  *Id.* ¶ 3.

**a. Discovery Relating to Other Incidents of Fire in Honda CR-Vs.**

At the time of filing, plaintiff had identified a handful of spontaneous fires in 2012-2014 Honda CR-Vs that were published on the internet.  *Id. ¶ 9.*  The available information on these incidents was limited.  Plaintiff filed suit against Honda and focused discovery on other incidents of fire in 2012-present model year Honda CR-Vs.  *Id. ¶ 10.*  Honda limited its response to 2012-16 CR-Vs and initially produced 1633 pages of documents, including digital notes describing communications to, from and within Honda regarding CR-V fires.  *Id.*  The notes described photos, reports and other documents that were not produced.

PLAINTIFF'S BRIEF FOR
EVIDENTIARY HEARING  - 2
No. 2:17-cv-01727-JCC

SCHROETER, GOLDMARK & BENDER
810 Third Avenue ● Suite 500 ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

Plaintiff brought these omissions to Honda's attention. Honda responded by producing additional documents on the following dates: 376 pages on April 6, 2018; 1220 pages of documents on May 24, 2018; 79 pages on July 26, 2018; O'Neil Decl. ¶ 10. Honda produced 111 additional pages of documents relating to the Fleming incident on December 5, 2018. Honda produced 106 pages of redacted documents relating to 15 additional CR-V fires on March 5, 2019 and the same pages, unredacted, on July 30, 2019. *Id. ¶* 21.

In total, Honda has produced evidence relating to approximately 60 incidents of spontaneous fire in 2012-2016 Honda CR-Vs.[1]  *Id.  ¶* 11. Some of the incidents are well documented, with dozens or hundreds of pages of photographs, inspection notes, expert notes, claim letters, etc. Others consist mainly of Honda's data entries. *Id.  ¶* 12. Plaintiff was able to contact some claimants and obtain additional information, including photographs, sworn declarations and depositions. Plaintiff also obtained information about several fire incidents not reported to Honda. *Id.* ¶ 9. Plaintiff's counsel provided all available documents relating to all incidents to engineer and automotive fire expert Mark Arndt. *Id*. at ¶ 11. Mr. Arndt reviewed and analyzed all of the incident files, eliminated dissimilar vehicles and fires, and created a list of 17 incidents that he considers substantially similar to the Foster fire. Declaration of Mark Arndt, ¶ 3-7.

### b. The 2012-2014 CR-V Has Unique Exhaust and Splash Shield.

Although 2012-2016 Honda CR-Vs appear outwardly similar, there are differences between the 2012-2014 model and the 2015-2016 model that impact Mr. Arndt's analysis. *Id.*

---

[1] These final two productions relate to 16 incidents, 15 of which had not been disclosed, and were produced to plaintiff *after* the discovery cutoff and *after* plaintiff's F.R.C.P. 30(b)(6) deposition of Honda on the issue of other incidents—this despite the fact that Honda assured plaintiff its production of other incidents was complete prior to the deposition. Decl. of Peter O'Neil, ¶ 21 and Ex. 4.

PLAINTIFF'S BRIEF FOR
EVIDENTIARY HEARING  - 3
No. 2:17-cv-01727-JCC

SCHROETER, GOLDMARK & BENDER
810 Third Avenue • Suite 500 • Seattle, WA  98104
Phone (206) 622-8000 • Fax (206) 682-2305

¶ 4. The 2012-2014 CR-V's engine and exhaust system were different from the engine and exhaust system on the 2015-2016 CR-V. *Id*. On the 2012-2014 model the primary catalytic converter was at the rear of the engine compartment; in 2015-2016 models the catalytic converter was moved to the front, closer to the radiator and cooling fan. *Id*. Also, the 2012-2014 Honda CR-V had a unique underbody splash shield that enclosed the entire engine compartment. *Id*. (The photos below show the splash shield in place and removed.)

 

Plaintiff contends that this shield allows organic and other material to accumulate near to hot exhaust components that pass over the shielding and the vehicle sub-frame, and to be trapped there where it dries and eventually ignites—i.e., once inside the engine compartment, the material stays. *Id*. ¶3. The portion of the splash shield beneath the engine compartment was removed from the 2015-2016 models CR-V. *Id*. ¶ 4. Photos of the 2012-

PLAINTIFF'S BRIEF FOR
EVIDENTIARY HEARING - 4
No. 2:17-cv-01727-JCC

SCHROETER, GOLDMARK & BENDER
810 Third Avenue ● Suite 500 ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

2014 splash shield and the 2015-2016 splash shield are shown below and are attached to O'Neil Decl. as Exhibits 5 and 6.

 

(2012-2014 Splash Shield)            (2015-2016 Splash Shield)

### c. A Joint Inspection Reveals Evergreen Needles on Unburned Portion of Foster Splash Shield.

On February 4, 2019, at a joint inspection attended by Honda's representative and Honda's attorney, the remains of the splash shield beneath the engine was removed. Declaration of Sam Shuck, ¶ 2. Unburned evergreen needles were found on the unburned portion of the engine compartment splash shield beneath fire debris. *Id. ¶* 4. Plaintiff's rodent expert, Grzegorz A. Buczkowski, Ph.D., has testified that these needles are consistent with rodent nesting in the engine compartment, and that the 2012-2014 engine compartment, enclosed with the engine splash shield, is an ideal habitat for nesting rodents. Dkt. 46-4, p.11; Dkt. 46-3, pp. 22-25, 32-33.

### d. Five 2012-2014 CR-V Fires are Reported to Honda Prior to Ms. Foster's Death.

Five fires in 2012-2014 Honda CR-Vs were reported to Honda prior to Ms. Foster's death. Arndt. Decl. ¶ 8 and Exhibits E-1-5. Each of these fires ignited while the CR-V was being driven. *Id.* Ex. E1-5. Three of the fires (Arndt Incidents 1, 3 and 5, discussed below) were investigated by Honda. *Id.* ¶9, Ex. E1, 3, 5. In each of the three fires that were investigated by Honda, the Honda investigator found that organic material within the engine

PLAINTIFF'S BRIEF FOR
EVIDENTIARY HEARING  - 5
No. 2:17-cv-01727-JCC

SCHROETER, GOLDMARK & BENDER
810 Third Avenue ● Suite 500 ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

compartment was ignited by hot exhaust components. *Id.* The other two fires (Arndt Incidents Numbers 2 and 4) appear not to have been investigated by Honda. *Id*. Ex. E-2,4. However, Mr. Arndt includes them in his list of 17 similar incidents.

### e. Honda Blames Four 2012-2014 CR-V Fires on Rodent Nesting Material.

**Arndt Incident Number 1.** One CR-V fire (Arndt incident number 1) reported to Honda in February 2013, describes the complaint as: "Underhood, Rear Engine Area" and says "Debris at Exhaust; Possible Rodent Nest." Arndt Decl. Ex. E-1 and Dkt. 31-1, p. 4. A Honda fire investigator then states: "consistent with leaves or debris accumulating in the area of the subframe and steer rack. This can be from rodents nesting in that are[a]." *Id*. p. 6, entry 41.

**Arndt Incident Number 3; Suyuen Lee.** Honda describes the probable cause of a March 2014 CR-V fire (Arndt incident number 3) as "Orgainc (sic) Debris (Rodent?) Found Near Lower Exh(aust)" and explained that "In an area near the center of the engine, a melted area of the engine lower cover can be seen. This is the area of origin of the fire. When the lower engine cover was removed, burned organic debris was found here piled on the cover." Arndt Decl. Ex. E-3 and Dkt. 31-1 at 17, 25. The owner/witness to this fire was Suyuen Lee, who has testified in this case.

**Arndt Incident Number 5; Carolina Avendano Arce/Aric Smarra.** A November 2014 fire that was reported to Honda about two weeks before the Foster fire is described by Honda as "Vehicle Fire/Leaves on Undercarriage." Arndt Decl., Exhibit E-5; *see also* Dkt. 31-1, pp.44-54. The incident involved Carolina Avendano Arce, who has testified in this case along with her husband Aric Smarra. Photographs in Honda's file show leaves in unburned parts of the car, and show fire damage to the engine compartment splash shield, to

PLAINTIFF'S BRIEF FOR
EVIDENTIARY HEARING - 6
No. 2:17-cv-01727-JCC

SCHROETER, GOLDMARK & BENDER
810 Third Avenue • Suite 500 • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

other shielding near the exhaust, and to other components near the sub-frame and exhaust. *Id*.

**Arndt Incident Number 8; Heather Adamson.** A fourth incident selected by Mr. Arndt was also investigated by Honda. The incident involved Heather Adamson, who has testified about her experience in this case.

> "122- Some partially burned twigs were found on the lower splash shield when it was lowered to inspect the underside of the exhaust area.
>
> "123- Some partially burned twigs were found near the exhaust pipe below the area of the worse (sic) damage behind the engine."

The Honda investigator then states:

> "126... This supports that the most probably (sic) cause for this fire was rodent activity pulling debris into the vehicle engine area, then piling it up near the exhaust system when the vehicle was parked.
>
> "127- When the vehicle was started the heat from the exhaust ignited the debris here starting the fire. Then, the fire transferred onto other plastic items in the engine compartment spreading the fire."

Arndt Decl. Ex. E-8. *See also* Dkt. 31-1, pp. 57, 62.

Ms. Adamson testified that Honda never told her that their investigation of her CR-V fire determined that rodents had caused the fire by nesting in her engine compartment.

**f.   Organic Material Implicated in Other CR-V Fires Reported to Honda.**

**Arndt Incident Number 7.** The vehicle caught fire while being driven, first emitting white smoke. Honda's file contains reference to nesting mice. Arndt Decl. ¶. 10, Ex. E-7.

**Arndt Incident Number 11**. Another owner, who reported her fire to Honda but whose fire was not investigated by Honda, testified that she smelled burning leaves while driving home and thought neighbors must be burning leaves. Instead, her neighbor ran up to her car as she parked and yelled that the car was on fire. *Id*. ¶ 11, Ex. E-11.

PLAINTIFF'S BRIEF FOR
EVIDENTIARY HEARING - 7
No. 2:17-cv-01727-JCC

SCHROETER, GOLDMARK & BENDER
810 Third Avenue • Suite 500 • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

### g. Another Incident, Not Reported to Honda, Includes Evidence of Rodent Nesting.

**Arndt Incident Number 6.** This incident is a 2012 CR-V that caught fire while in a drive through at KFC. The fire report refers to organic matter as the first fuel. The driver was told by a first responder that there was a rodent nest at the bottom of the engine compartment. *Id.* ¶ 12 and Ex. E-12.

### h. Engineering and Automotive Fire Expert Arndt will use Similar Incidents to Prove Defect; He First Eliminates Duplicate and Irrelevant Files.

Plaintiff will call engineering and fire expert Mark Arndt to help the jury understand defect and causation. Mr. Arndt will testify that the 2012-2014 Honda CR-V was defective because of an engine compartment splash shield design that allows material to accumulate near very hot but unshielded portions of the exhaust system. *Id.* ¶ 2. Mr. Arndt will use OSI files from Honda to demonstrate the defect, and show that Honda was aware that organic material resting on the splash shield or sub-frame can be ignited by the hot unshielded exhaust components. *Id.* ¶¶ 2, 3, 8, 9, 10, 11, 12, 13.

In conducting his review Mr. Arndt began with what appeared to be 66 separate incidents, but eliminated several as duplicate files. *Id*. ¶¶ 4-7. He then eliminated incidents involving CR-Vs with a different engine or exhaust system, reducing the universe of incident files to 33. *Id.* He then applied various criteria to arrive at his opinion that 17 of the 33 spontaneous fire incidents involving 2012-2014 CR-Vs are "substantially similar" to the Foster incident. *Id.* For purposes of this motion he then gave each of the 17 incidents a unique identification number, 1-17. *Id*. ¶ 7. In review:

- Arndt Incidents Numbers 1, 2, 3, 4, 5 were reported to Honda prior to the fire that killed Meike Foster. *Id.* ¶ 8.

- Arndt Incidents Numbers 1, 4, 5 and 8 include direct evidence from Honda that organic materials and/or rodent nesting material trapped in the area of the hot exhaust components by underbody shielding was the initial fuel for combustion. *Id.* ¶ 9.

- Arndt Incident Number 7 is consistent with ignition of organic material and contains references to a mouse nest being a possible cause of the fire. *Id.* ¶ 10, Ex. E-7.

- Arndt Incident Number 11 is consistent with organic material inside the car being ignited and the driver recalls smelling burning leaves just prior to the fire. *Id.* ¶ 11, Ex. E-11.

The remaining ten incidents are consistent with Mr. Arndt's defect theory, but Honda failed to thoroughly investigate these incidents to provide direct evidence of defect. *Id.* ¶ 13. (Although Honda failed to actively investigate many of the incidents, the company nonetheless employed a full time fire manager to field customer complaints of fire. Dkt. 46, ¶ 4; Dkt. 46-1, pp. 4 – 5.)

## V.  DISCUSSION AND LAW

### a) Substantial Similarity in a Product or Negligence Case.

Similar incidents of product failure is critical evidence in a product liability case. The favored method of presenting evidence of other accidents is through the testimony of those familiar with such accidents. *Wheeler v. John Deere Co.* 862 F.2d 1404, 1408 (10th Cir. 1988). A showing of substantial similarity is required when a plaintiff attempts to introduce evidence of other accidents as direct proof of negligence, a design defect, or notice of the defect. *White v. Ford Motor Co.,* 312 F.3d 998, 1009 (9th Cir. 2002); *Cooper v. Firestone Tire & Rubber,* 945 F.2d 1103, 1005 (9th Cir. 1991). Minor or immaterial dissimilarity does not prevent admissibility. *White* at 109. The rule rests on the concern that evidence of dissimilar accidents lacks the relevance required for admissibility under FRE 401 and 402. *Cooper* at 1105. Any differences in the accidents not affecting a finding of substantial

PLAINTIFF'S BRIEF FOR
EVIDENTIARY HEARING  - 9
No. 2:17-cv-01727-JCC

SCHROETER, GOLDMARK & BENDER
810 Third Avenue ● Suite 500 ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

similarity go to the weight of the evidence. *Wheeler* at 1408; citing *Jackson v. Firestone Tire & Rubber Co.*, 788 F.2d 1070, at 1083 (5th Cir. 1986).

### b) The Substantial Similarity Requirement is Relaxed when Evidence is Offered to Prove Notice.

The requirement for substantial similarity is relaxed when the evidence of other accidents is submitted to prove notice or awareness of the potential defect. *Wheeler* at 1407-8; *Pau v. Yosemite Park and Curry Co.*, 928 F.2d 880, 889 (9th Cir. 1991). Here, five of the CR-V fire incidents that Mr. Arndt determined were similar to Foster (Arndt incident numbers 1-5) occurred prior to the fire that killed Ms. Foster and will be offered to prove notice to Honda of a potential safety defect. Three of those incidents are well documented and will be offered for other purposes as well, including to prove defect. The two less well documented incidents will be offered only to prove notice or awareness of a potential defect and should benefit from the more relaxed standard for notice.

### c) Plaintiff's Evidence Satisfies Substantial Similarity Requirements.

*White v. Ford* demonstrates how a party satisfies the substantial similarity requirements. *White* involved a Ford pickup truck that rolled over a boy after he accidentally knocked its gearshift out of park and the parking brake failed. *White* at 1102. Plaintiffs' theory of the case was that Ford knew the parking brake was prone to failure. Ford had pre- and post-production reports of potential problems with the parking brake, including from customers. The the District court was within its discretion when it allowed (1) a Ford pickup truck owner to testify that her truck had rolled despite parking brake being set; (2) an expert to testify about that incident; and (3) an exhibit into evidence showing Ford received number

PLAINTIFF'S BRIEF FOR
EVIDENTIARY HEARING  - 10
No. 2:17-cv-01727-JCC

SCHROETER, GOLDMARK & BENDER
810 Third Avenue ● Suite 500 ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

of complaints of rollaways. *Id*. at 1009. Customer reports (such as the customer reports to Honda) are admissible under the business records exception to the hearsay rule to show that Ford had notice of rollaways. *Id.* . Finding there was no abuse of discretion, the Circuit Court affirmed each of these ruling by the District Court.

Here, Plaintiff's expert has identified 17 Honda CR-V fires that are substantially similar to the Foster incident. All but one began as customer reports to Honda. A handful resulted in detailed investigations by Honda. Others have been supplemented with discovery by plaintiff. At the hearing, plaintiff will make an offer of proof relating to the 17 incidents Mr. Arndt has identified. Plaintiff will ask Mr. Arndt to describe his process for reviewing the incidents and to explain the winnowing process that eliminated approximately 75 percent of the incidents. He will also be asked to explain why certain of the incidents are relevant to proving fire causation and defect. Some contain clear, direct evidence (photographs and notes from Honda fire investigators) of organic debris on or near the engine compartment splash shield or subframe; others are based on more circumstantial evidence such as a witness's description of the smell of burning leaves. Others, less well investigated by Honda, are simply consistent, in important ways, with Mr. Arndt's theory—i.e., a similar car that ignites on the road or soon after parking, with a fire that originates under the hood or near the sub-frame.

### d) Similar Incidents are Admissible for Proving Damages.

In addition to being admissible to prove defect and/or notice, drivers involved in several of the incidents selected by Mr. Arndt have testified that they were frightened by the experience of driving a car that erupted in flames. O'Neil Decl. Ex. 7. Meike Foster was found with the ignition keys in her hand, evidence that she knew her predicament and was

PLAINTIFF'S BRIEF FOR
EVIDENTIARY HEARING - 11
No. 2:17-cv-01727-JCC

SCHROETER, GOLDMARK & BENDER
810 Third Avenue ● Suite 500 ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

trying to exit her burning vehicle. Under Washington's special survival statute, a personal representative of a decedent has the authority to bring a personal injury cause of action for the decedent's injuries that result in death. RCW 4.20.060; *Otani v. Broudy*, 151 Wn.2d 750, 756, 92 P.3d 192 (2004). The decedent's representatives may recover the decedent's damages for any pain and suffering between the time of injury and the time of death. RCW 4.20.060; *Chapple v. Ganger*, 851 F. Supp. 1481, 1488 (E.D. of Wash. 1994). Evidence of emotional pain and suffering from survivors of similar incidents is therefore relevant and admissible to prove damages. In *Wheeler v. John Deere Co., supra,* the trial court permitted the live testimony of five witnesses injured by Deere's combine. *Wheeler* at 1407. The Circuit court held that the testimony was not unduly prejudicial. *Id.* at 1408. As noted above, the *Wheeler* court held that "the favored method of presenting evidence of other accidents is through the testimony of those familiar with such accidents." *Id.* Here, Plaintiff intends to bring three Honda CR-V fire survivors to testify live or by video deposition about their experience. Evidence relating to the severity of harm (the physical and emotional pain of burning to death) (RCW 7.72.030(1)(a)) and evidence relating to consumer expectations (RCW 7.72.030(3)) are also relevant for the balancing test required to prove defect under RCW 7.72.030. Such evidence has substantial probative value in concert with ER 403.

## VI. CONCLUSION.

The 17 incidents identified by Mr. Arndt in his Declaration are substantially similar and should be admitted at trial for the purposes of proving notice, defect and/or damages.

///

///

///

1 | DATED this 24th day of September, 2019.

2 | SCHROETER, GOLDMARK & BENDER

3 | By: *s/Peter O'Neil*
PETER O'NEIL, WSBA #28198
4 | THOMAS J. BREEN, WSBA #34574
SERGIO GARCIDUEÑAS-SEASE, WSBA #46958
5 |

6 | Counsel for Plaintiff
810 Third Avenue, Suite 500
7 | Seattle, WA  98104
Phone:  (206) 622-8000
8 | Fax:  (206) 682-2305
peter@peteroneil.org
9 | breen@sgb-law.com
sergio@sgb-law.com
10 |

PLAINTIFF'S BRIEF FOR
EVIDENTIARY HEARING  - 13
No. 2:17-cv-01727-JCC

SCHROETER, GOLDMARK & BENDER
810 Third Avenue ● Suite 500 ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

**CERTIFICATE OF SERVICE**

I hereby certify that on September 24, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

David J. Russell
KELLER ROHRBACK, LLP
1201 3rd Ave., Suite 3200
Seattle, WA 98101
Phone: 206-623-1900
Fax: 206-623-3384
drussell@kellerrohrback.com

By: *s/Peter O'Neil*
PETER O'NEIL, WSBA #28198
Counsel for Plaintiff
SCHROETER, GOLDMARK & BENDER
810 Third Avenue, Suite 500
Seattle, WA  98104
Phone:  (206) 622-8000
Fax:  (206) 682-2305
E-mail:  peter@peteroneil.org